UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN LESSIEUR, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-10831-ADB |
| | * | |
| KELLY RYAN, | * | |
| | * | |
| Respondent. | * | |
| | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

On May 3, 2016, Petitioner Shawn Lessieur ("Petitioner") filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2009 conviction in Middlesex

Superior Court for first degree murder and the unlawful possession of a firearm.  [ECF No. 1].

After reviewing the parties' submissions, and construing Petitioner's pleadings liberally because

he is proceeding *pro se*, Petitioner's petition for a writ of habeas corpus, [ECF No. 1], is

DENIED for the reasons set forth below.

## I.    FACTUAL BACKGROUND

The Massachusetts Supreme Judicial Court ("SJC") provided an account of the facts as

the jury could have found them, which is summarized in relevant part below.  See

Commonwealth v. Lessieur, 34 N.E.3d 321, 324–27 (Mass. 2015).[1]

> [Petitioner] and [Nolyn] Surprenant first met in 1989, when [Petitioner]
> moved into the foster home where Surprenant, then fourteen years of age, lived.

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  This presumption applies with equal force to findings of fact by state trial and appellate courts.  Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

The two became very close and Surprenant began selling drugs for [Petitioner] two or three years later.  Surprenant dropped out of high school and moved out of the foster home and into the apartment that [Petitioner] shared with his girl friend, Stacy Cruz . . .

[Petitioner] and Surprenant both knew [Mark Jones,] the victim, although the victim was part of a different social group.  The victim had a reputation for violence and threatened to rob [Petitioner] about two weeks before the murder.  The victim was murdered on March 17, 1994.

Mark Beaulieu, then a resident of the University Heights apartment complex off Skyline Drive in Lowell, witnessed some of the events that occurred at the scene that evening. . . .  He was outside of his apartment with his wife at about 6:55 P.M., clearing snow off their vehicle.  He noticed a vehicle parked with the engine running near the dumpster area of the complex and someone in the driver's seat.  He heard two gunshots fired a few seconds apart, . . . and then saw someone come out from the side of the building near the dumpster and get into the passenger seat of the vehicle.  He approximated that, based on the roof line of the vehicle, the passenger was "no taller than six feet" and had shorter hair, but was not able to describe any other details of the driver or passenger.  The vehicle then turned to leave the apartment complex.

Beaulieu and his wife got into their vehicle and followed the departing vehicle.  He could not get a clear view of the license plate, but described the vehicle as "Toyotaish, . . . Japanese make older boxy."  Beaulieu eventually turned around and returned to the apartment to call the police.

The victim was found in the early morning hours of March 18, 1994, lying face up in the dumpster area of University Heights.  He was fully clothed, except that his penis was outside of his pants. . . .  The victim had been shot once on the left cheek and once on the back left side of his head near his neck.  Either shot would have killed him, and he likely died in seconds.

Police officers interviewed fifty to one hundred people during their investigation, but did not establish any concrete leads.  They did not talk to Surprenant during their initial investigation.

Twelve years after the murder, in April, 2006, two police officers went to the house that Surprenant shared with his pregnant wife to talk to him.  The police officers asked Surprenant if he would come with them to talk, which he understood to be in regard to the death of the victim.  Surprenant asked if he would be coming home that night, and the officers said that he would.  The officers drove him to Skyline Drive, where he described the victim's murder to them.  Surprenant told the officers that on the evening of the murder, [Petitioner] called Surprenant at the apartment they shared at about 6 P.M. and asked him to retrieve a gun from a reclining chair in [Petitioner]'s bedroom.  [Petitioner] explained that the victim was with him at the Chelmsford Street Projects.  Surprenant eventually found the gun and took it to [an acquaintance's] house.  He drove [Petitioner]'s blue Toyota Corolla automobile.

[Petitioner] met Surprenant outside [the acquaintance's] house.  [Petitioner] explained to Surprenant that he and the victim would get into the vehicle with Surprenant and expounded, "I told [the victim] I was going to take him to my

dealers."  The victim sat in the back seat of the vehicle and [Petitioner] sat in the passenger seat.  The victim thought they were going to [Petitioner]'s drug dealer to rob him.  Petitioner asked Surprenant to stop at a convenience store.  During this stop, Surprenant gave [Petitioner] the gun while the victim was not looking.

The three got back into the same seats in the vehicle and, following [Petitioner]'s directions, Surprenant drove to University Heights.  [Petitioner] asked Surprenant to park next to the dumpster and got out of the vehicle, stating that he was going to "take a piss."  The victim said he would go with [Petitioner].  Surprenant stayed in the driver's seat and turned the vehicle's lights off; he left the engine running.

[Petitioner] and the victim walked toward the side of the building.  About three to four minutes later, Surprenant heard two gunshots fired about three to five seconds apart.  About thirty seconds later, [Petitioner] came back to the car alone and Surprenant drove out of the apartment complex.  [Petitioner] said that he "shot [the victim] while we was taking a piss while he had his dick in his hand."  [Petitioner] said he shot the victim in the head and the face, but that he wanted to go back and make sure the victim was dead.  The two drove to their former foster home, where they stayed for approximately five minutes before Surprenant recommended that they go to the Tyngsboro bridge and dispose of the gun.  Surprenant parked near the bridge and [Petitioner] walked up and threw the gun off the side.  Surprenant drove back to their apartment.

Surprenant continued to sell drugs for [Petitioner] until August, 1994, when Surprenant was arrested for selling cocaine.  Although he and [Petitioner] remained friends, the two never discussed the murder except for the first couple of weeks following the murder, when [Petitioner] told Surprenant that he told a couple of people that he killed the victim.  Surprenant told his former girl friend, Kristin Tatro, about the murder in 1996 or 1997, and told his brother, Jason, and a foster brother about the murder in 1999.  Jason told Surprenant never to tell anyone else about what had happened or else he would be "locked up for the case."

In addition to the statement Surprenant made in the police cruiser, he made a video recorded statement that night at the Lowell police station.  He also led the police to the Tyngsboro bridge, where the two had disposed of the gun, and the police then took him home.  The following month, a warrant issued for Surprenant's arrest, and Surprenant turned himself in.  Surprenant's attorney negotiated a deal whereby Surprenant would testify against [Petitioner] in exchange for five years in State prison on a manslaughter charge.  Surprenant remained in custody from May, 2006, through [Petitioner's] trial.

The defense vigorously cross-examined Surprenant regarding recent contrivance, motive to lie, and bias, highlighting the terms of the deal that Surprenant made with the prosecution and suggesting that he contrived the testimony in an attempt to keep himself out of trouble.  Defense counsel also impeached Surprenant with inconsistencies in his testimony at trial, his testimony before the grand jury, his video recorded statement, and the police report written after Surprenant's statements on Skyline Drive and at the police station; a possible third-party culprit, "Minolo"; and memory issues, questioning Surprenant about his drug use at the time of the murder and a prior head injury.  In response to

impeachment for recent contrivance, the Commonwealth presented Surprenant's prior consistent statements through the testimony of Tatro, Jason, and Sergeant Joseph Murray, a police officer who conducted the April, 2006, interviews.

Tatro testified that she met Surprenant in 1993, had two children with him in 1995 and 1997, and that their relationship ended in 1998 or 1999. She said that Surprenant told her about the murder sometime during their relationship. He told her that he and [Petitioner] picked up the victim because the victim had been talking about robbing [Petitioner], and that [Petitioner] shot the victim. Tatro testified that police had asked her about the murder in 2005, but that she lied and told the police that she had no information because she was afraid and loyal to Surprenant.

Jason testified that Surprenant told him about the murder during the summer of 1999. Jason was out on parole during that period, having been incarcerated in 1994. Surprenant told Jason that he was in the vehicle when [Petitioner] shot the victim in the back of the ear and in the head. Surprenant also told Jason that he had an affair with Cruz in 1999, when she and [Petitioner] were still in a relationship.

Sergeant Murray recounted Surprenant's prior statements during the interview on Skyline Drive and then at the police station. He noted that there were no promises made to Surprenant before Surprenant started giving information about the crime. Sergeant Murray said that police officers only told Surprenant that he would be going home that night after Surprenant agreed to get into the cruiser with them. After Surprenant recounted the murder, he asked again if he was going home that night and the officers said that they would have to make a few telephone calls at the police station, but he was allowed to return home.

The defense strategy was to show that Surprenant himself was the shooter or that he participated in the crime with a third party. [Petitioner] called two witnesses, Jamie Simard and Stephen Andrade. Simard testified that Surprenant told him, in 1996 or 1997, that he drove the victim and "Minolo" to Skyline Drive and that Minolo shot the victim. Andrade testified that Surprenant threatened him, in 1995, because Andrade owed him money for drugs. Surprenant told Andrade that he had "one body under his belt" and "You think I'm kidding? You see [the victim], you see what happened to him." Surprenant then showed him a gun.

Lessieur, 34 N.E.3d at 324–27.

## II.    PROCEDURAL BACKGROUND

In October 2009, Petitioner was convicted of murder in the first degree on the theory of deliberate premeditation and of unlawful possession of a firearm. Lessieur, 34 N.E.3d at 324. He was sentenced to life without the possibility of parole on the murder conviction and to a concurrent sentence of four to five years for the unlawful possession of a firearm. Id. at 324 n.1. Petitioner timely filed a direct appeal. [ECF No. 13 (Supplemental Answer ("S.A")) Vol. I, Tab A]. While the direct appeal was pending, Petitioner filed a motion for a new trial ("MNT"),

which was remanded to the Superior Court for an evidentiary hearing.  [Id.].  After an

evidentiary hearing on February 27, 2012, the MNT was denied.  [S.A. Vol. I, Tab D].  Petitioner

appealed the denial of his MNT and that appeal was consolidated with his direct appeal.

Lessieur, 34 N.E.3d at 324.  The SJC ultimately affirmed Petitioner's convictions.  Id. at 334.

On November 2, 2015, the United States Supreme Court denied Petitioner's petition for writ of

certiorari.  Lessieur v. Massachusetts, 136 S. Ct. 418 (2015).

On May 3, 2016, Petitioner filed his petition for writ of habeas corpus, [ECF No. 1],

along with a request to stay the writ pending exhaustion of grounds in his state post-conviction

collateral motions, [ECF No. 4].  On June 27, 2016, the Court denied Petitioner's motion to stay,

[ECF No. 17], and later denied his subsequent motions requesting an advisory opinion about

tolling the statute of limitation, [ECF Nos. 21, 24].  On April 24, 2017, Petitioner filed a brief in

support of his petition, detailing seven grounds for relief.  [ECF No. 38].  On June 21, 2017,

Respondent filed her memorandum of law in opposition, [ECF No. 42], and on October 2, 2017,

Petitioner filed a reply brief, [ECF No. 47].

## III.   LEGAL STANDARD

### A.    Exhaustion of State Remedies

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may grant habeas relief on claims previously adjudicated on the merits only after the

petitioner has exhausted all available state remedies.  28 U.S.C. § 2254(b)–(c); see Sullivan v.

Boerckel, 526 U.S. 838, 845 (1999) (noting that Section 2254(c) requires that state prisoners

give state courts a fair opportunity to review their claims and correct alleged constitutional

violations before review by a federal court).

"The exhaustion requirement" stems from the idea that "as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Conningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)).  A claim for habeas relief is exhausted if it has been "fairly and recognizably" presented in state court.  Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)).  In other words, "a petitioner must have tendered his federal claim [in state court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question."  Id. (internal quotation marks and citations omitted).

To fulfill the exhaustion requirement, a petitioner "bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim."  Conningford, 640 F.3d at 482 (quoting Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)); see also Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994) ("In order to present a federal claim to the state courts in a manner sufficient to satisfy exhaustion concerns, a petitioner must inform the state court of both the factual and legal underpinnings of the claim.").  "[A] petitioner can successfully claim that he has presented the same legal theory to the state court by presenting the substance of a federal constitutional claim in such a manner that it 'must have been likely to alert the court to the claim's federal nature.'"  Dougan v. Ponte, 727 F.2d 199, 201 (1st Cir. 1984) (quoting Daye v. Attorney Gen. of N.Y., 696 F. 2d 186, 192 (2d Cir. 1982) (en banc)).

The First Circuit has recognized five ways in which a petitioner may satisfy the "fair presentment" exhaustion requirement of the AEDPA.  Conningford, 640 F.3d at 482.  "These include reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional

precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Id. (citing Scarpa, 38 F.3d at 6).

### B.      Grounds for Habeas Relief

Assuming that the exhaustion requirement has been satisfied, the AEDPA permits habeas relief only if the previous adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion contrary to that reached by the Supreme Court on a question of law, or if the court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. 362, 404–05 (2000).  A state court unreasonably applies federal law when it "correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply."  Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009).  An unreasonable application requires "some increment of incorrectness beyond error."  Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (citation omitted).  A petitioner must show that the state court decision applied clearly established law in a way that was "objectively unreasonable."  Sanchez, 753 F.3d at 299 (quoting White v. Woodall, 572 U.S. 415, 419 (2014)).

Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). "Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citing Estelle, 502 U.S. at 67–68). "'[T]he gap between erroneous state court decisions and unreasonable ones is narrow,' and 'it will be the rare case that will fall into this gap.'" O'Laughlin v. O'Brien, 568 F.3d 287, 299 (1st Cir. 2009) (quoting Evans v. Thompson, 518 F.3d 1, 6 (1st Cir. 2008)).

The AEDPA presumes that the state court's factual findings are correct and requires rebuttal by the petitioner with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof."); see also Linton v. Saba, 812 F.3d 112, 116 (1st Cir. 2016) ("We must accept the state court findings of fact unless convinced by clear and convincing evidence that they are in error." (internal citation and internal punctuation omitted)). The factual findings include "'basic, primary, or historical facts,' such as witness credibility and recitals of external events." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (quoting Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001)).

## IV.    DISCUSSION

Petitioner presents seven grounds for habeas relief: (1) trial counsel failed to object to the admission of prior consistent statements; (2) the uncorroborated testimony of a co-defendant provided insufficient evidence to convict; (3) the judge considering his motion for a new trial erred in making credibility determinations about witnesses testifying at the hearing; (4) trial counsel failed to elicit testimony that Surprenant and Cruz had an affair and that Surprenant offered to kill Petitioner; (5) trial counsel failed to object to the introduction of evidence of Cruz's age at the time she began her relationship with Petitioner; (6) trial counsel failed to try to impeach Surprenant through evidence of his conviction for assault and battery; and (7) the prosecution improperly vouched for Surprenant during his closing statement.  [ECF No. 1 at 5–17].

### A.    Ineffective Assistance of Counsel

Four of the seven grounds for relief Petitioner raises relate to the purported ineffective assistance of his trial counsel.  See [ECF No. 1 at 5–17 (Grounds 1, 4, 5, and 6)].

To succeed on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance fell "below an objective standard of reasonableness" and that counsel's deficient performance prejudiced the petitioner's case.  Smoak v. United States, 12 F. Supp. 3d 254, 264 (D. Mass. 2014) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)) (explaining that Strickland establishes a strong presumption of reasonable professional assistance); see Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) ("[A] lawyer's performance is deficient under Strickland 'only where . . . counsel's choice was so patently unreasonable that no competent attorney would have made it.'" (citation omitted)).

Even if a lawyer's performance is so unreasonable as to render it constitutionally unacceptable, Strickland, 466 U.S. at 687, a court must still withhold relief unless a petitioner also demonstrates prejudice, meaning that "but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different," Sleeper, 510 F.3d at 39.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  The Strickland standard is broadly deferential to the strategic and tactical decisions of trial counsel, making them "virtually unchallengeable."  Strickland, 466 U.S. at 689–90.

Further, "where [a] petitioner's claim was adjudicated on the merits by the state court . . . [that] petitioner must also satisfy the AEDPA standard."  Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009).  Thus, "to establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, [a] petitioner bears a doubly heavy burden" because that petitioner must contend with both the deferential Strickland standard and the deferential standard required by § 2254.  Id.

> First, the 'pivotal question' in a federal collateral attack under Strickland is not 'whether defense counsel's performance fell below Strickland's standard,' but 'whether the state court's application of the Strickland standard was unreasonable' . . . . Second, the Strickland standard is a very general one, so that state courts have considerable leeway in applying it to individual cases.

Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (citing Harrington, 562 U.S. at 785–86).

The SJC analyzed all of Petitioner's ineffective assistance claims under Massachusetts General Laws ch. 278, § 33E to "determine whether there exist[ed] a substantial likelihood of a miscarriage of justice . . . ."  Lessieur, 34 N.E.3d at 330 (quoting Commonwealth v. Frank, 740 N.E.2d 629, 633 (2011)).  In doing so, the SJC "consider[ed] whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion."  Id. (quoting Frank, 740 N.E.2d at

633).  Because the standard under Massachusetts General Laws ch. 278, § 33E "is more

favorable to the defendant than the constitutional standard articulated in <u>Strickland v.</u>

<u>Washington</u>," the Court reviews the SJC's determination by applying AEDPA deference under

§ 2254(d)(1).  <u>Kirwan v. Spencer</u>, 631 F.3d 582, 590 n.3 (1st Cir. 2011) (internal citation

omitted) (citing <u>Commonwealth v. Wright</u>, 584 N.E.2d 621, 624 (Mass. 1992)).  Where the state

court applied a standard that was more favorable to Petitioner than the federal <u>Strickland</u>

standard, the SJC clearly did not apply "a rule that contradicts the governing law" set forth in

federal ineffective assistance cases.  <u>See</u> <u>Williams</u>, 529 U.S. at 405.

### 1.   Failure to Object to Prior Consistent Statements

Petitioner first argues that trial counsel was ineffective by failing to object to the

admission of Surprenant's prior consistent statements.  [ECF No. 1 at 5; ECF No. 38 at 19–27].

Respondent contends that trial counsel's performance was not deficient.  [ECF No. 42 at 22–

23].[2]

On appeal, the SJC found that trial counsel's failure to object to the admission of

Surprenant's prior consistent statements was not error as those statements were admissible.

<u>Lessieur</u>, 34 N.E.3d at 330.[3]  The SJC observed that, as to the admission of multiple prior

---

[2] In connection with this ground for relief, Petitioner also argues that trial counsel should have pursued an alternative strategy of stating that Surprenant did not recently contrive his story (thus opening the door to prior consistent statements), but instead Surprenant had developed a plan to frame Petitioner for the murder as early as the late 1990s, when Surprenant first told someone that Petitioner committed the crime.  [ECF No. 38 at 21, 25; ECF No. 47 at 3–4].  In his brief on direct appeal, however, Petitioner did not suggest that trial counsel was ineffective for failing to pursue this alternative strategy.  [S.A. Vol. I, Tab F at 25–34].  Instead, he claimed that trial counsel correctly cross-examined Surprenant regarding his plea deal and that the prosecution "was grossly unfair" in using this to justify the admission of testimony on prior consistent statements.  [<u>Id.</u> at 25].

[3] In Section IV.B, <u>infra</u>, the Court will address Petitioner's claim that the trial court erred in admitting these statements.

consistent statements, each witnesses' testimony was "relevant to rebut various claims of recent contrivance." Id. Trial counsel did succeed in excluding Surprenant's recorded statement and in getting the judge to provide limiting instructions on the prior consistent statements during both the trial and in the court's final jury instructions. Id. at 326 n.3, 328 n.6. In addition, to challenge Surprenant's credibility, trial counsel elicited testimony from witnesses for the defense who said that Surprenant told them that he had committed the murder himself. Id. at 327.

The SJC's determination that trial counsel did not err and was therefore not ineffective was not an unreasonable application of federal law. Trial counsel's failure to "pursue a futile tactic" by objecting to admissible evidence, in this case, the prior consistent statements, does not render his performance deficient. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("Counsel is not required to waste the court's time with futile or frivolous motions." (citing United States v. Wright, 573 F.2d 681, 684 (1st Cir. 1978))). The SJC's finding that trial counsel was not ineffective based on the evidence of his performance at trial is also consistent with Strickland. See 466 U.S. at 689 (holding that petitioners must overcome the presumption that counsel exercised a "sound trial strategy"). Further, Petitioner has failed to demonstrate that the state court's application of the § 33E standard was unreasonable. See Jewett, 634 F.3d at 75 (holding that habeas review of ineffective assistance claims is limited to determining whether state court application of Strickland was unreasonable); Kirwan, 631 F.3d at 590 n.3 (observing that the § 33E standard is more favorable than Strickland).

### 2.    Failure to Raise Cruz Affair or Surprenant's Offer to Kill Petitioner

In both his appeal to the SJC and his petition, Petitioner raised an ineffectiveness claim related to trial counsel's failure to impeach Surprenant's testimony with evidence of a short-term affair between Surprenant and Cruz in the late 1990s and a related offer by Surprenant to kill

Petitioner.  Lessieur, 34 N.E.3d at 331–32; [ECF No. 1 at 10; ECF No. 38 at 40–41].

Respondent states that the SJC's decision was reasonable because this evidence was presented to

the jury through other witnesses.  [ECF No. 42 at 25–27].

      In applying the § 33E standard, the SJC found that trial counsel's failure to impeach

Surprenant with this information did not constitute ineffective assistance, as "the jury were aware

of the evidence of the sexual affair through another witness."  Lessieur, 34 N.E.3d at 332.

Further, the SJC noted that "the alleged affair and threat occurred four to five years after the

murder, [rendering] the assertion that the evidence would undermine the theory that Surprenant

was under the [Petitioner's] control at the time of the murder" largely irrelevant.  Id.  In addition,

the SJC observed that "there was no evidence . . . that trial counsel knew of the threat before

trial."  Id. at 332 n.12.  The SJC concluded, however, that "[e]ven if trial counsel had been aware

of the alleged threat," the threat would have been made on the same night that Petitioner and

Cruz had a fight, so that "trial counsel may have strategically decided not to raise the issue in

order to prevent potential evidence of the [Petitioner's] aggressive behavior from being

admitted."  Id.

      Because the evidence in question was introduced through other witnesses, Petitioner has

failed to demonstrate that by applying the § 33E standard, which is more favorable to Petitioner

than Strickland, the SJC incorrectly or unreasonably applied federal law to this claim of

ineffective assistance.  See Jewett, 634 F.3d at 75 (limiting habeas review to a determination of

whether state court application of Strickland was unreasonable); Kirwan, 631 F.3d at 590 n.3

(noting that the § 33E standard is more favorable to defendants than the standard articulated by

Strickland).

3.      Failure to Object to Testimony Regarding Cruz's Age

In his appeal to the SJC and again in his habeas petition, Petitioner argues that counsel was ineffective for failing to object to testimony regarding the fact that his former girlfriend and witness for the prosecution, Cruz, was fifteen when she and Petitioner began dating.  [ECF No. 1 at 16; ECF No. 38 at 41–43].  He believes this information was prejudicial as jurors may have viewed him as a child abuser.  [ECF No. 38 at 41–42].  Respondent states that both the MNT judge and the SJC reasonably decided that Cruz's age was relevant and that trial counsel's failure to object was therefore not prejudicial.  [ECF No. 42 at 23–25].

The SJC held that even if trial counsel had filed a motion in limine to exclude Cruz's age, the prosecution would still have been able to ask about the duration of Cruz's relationship with Petitioner in order to probe her potential bias towards him.  Lessieur, 34 N.E.3d at 330–31.  Such evidence could have revealed the age gap between Petitioner and Cruz without direct evidence of her age at the time she began dating Petitioner.  Id.  In addition, the SJC found that trial counsel may have strategically decided not to try to conceal her age at the start of the relationship to avoid other temporal aspects of their relationship, including that their relationship ended when Petitioner went to prison for an unrelated offense.  Id. at 331.

Under Strickland, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  The SJC was not unreasonable in finding, through its § 33E analysis, that Petitioner had failed to overcome this presumption.  See Norton, 351 F.3d at 8 (noting that an unreasonable application of clearly established law "exists . . . when there is some increment of incorrectness beyond error").

4.      Failure to Introduce Evidence that Surprenant Was on Probation

Lastly, Petitioner argues that trial counsel was ineffective for failing to ask Surprenant about the fact that he was on probation for assault and battery.  [ECF No. 1 at 16; ECF No. 38 at 43–44].  Petitioner raised this for the first time on appeal with the SJC.  Lessieur, 34 N.E.3d at 332.  Respondent counters that Petitioner failed to present evidence to the SJC that Surprenant was on probation related to an assault and battery conviction and that there was already evidence of another conviction on the record.  [ECF No. 42 at 26–27].

The SJC stated that because Petitioner had failed to provide evidence about the alleged probation or about trial counsel's knowledge of and decision-making around whether or not to question Surprenant about the alleged probation, the court was unable to determine whether trial counsel had erred.  Lessieur, 34 N.E.3d at 332.  The SJC noted, however, that Surprenant's prior convictions were discussed at sidebar, suggesting that trial counsel was at least aware of some of Surprenant's prior convictions, even if the record is unclear as to a specific conviction for assault and battery.  Id.  In addition, the SJC observed that "evidence was admitted through testimony" regarding Surprenant's criminal background.  Id. at 332 n.13.

Where Petitioner failed to provide evidence in support of this ineffective assistance claim, the SJC's failure to find that trial counsel erred was reasonable.  In addition, the fact that there was testimony about other prior convictions suggests that Petitioner was not prejudiced by the alleged ineffectiveness.  See Strickland, 466 U.S. at 693 (holding that a defendant must "affirmatively prove prejudice").

**B.      Trial Court Error in Admitting Prior Consistent Statements**

In his petition, Petitioner alleges that the trial court erred in admitting prior consistent statements and that this error violated his constitutional rights (as distinct from his claim that it

was ineffective assistance for trial counsel not object to the admission of the prior consistent

statements).  [ECF No. 38 at 17–19].[4]  As a threshold matter, Respondent argues that Petitioner's

claim is procedurally defaulted because Petitioner did not object to this testimony at trial.  [ECF

No. 42 at 14–16].  Because the SJC "consistently enforces the rule that unpreserved claims are

forfeited," Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004), Respondent asserts that this issue

has been resolved on an adequate and independent state law ground,  [ECF No. 42 at 12–16].

> The First Circuit has noted that
>
> [a] state court's decision to find a forfeiture, based on the defendant's failure to
> object at trial, is an independent and adequate ground for decision so long as the
> state court consistently applies its contemporaneous objection rule and has not
> waived it in the particular case by basing the decision on some other ground.

Horton, 370 F.3d at 80–81.  "The SJC consistently enforces the rule that unpreserved claims are

forfeited . . . ."  Id. at 81.  Even so, the SJC may review of a claim under the "substantial

likelihood of a miscarriage of justice" standard without waiving its finding that the claim was

forfeited.  Id.; see also Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) ("This

discretionary miscarriage-of-justice review does not amount to a waiver of the state's

---

[4] In his petition, Lessieur did not allege that the trial judge erred in admitting prior consistent
statements distinct from alleging the ineffective assistance of counsel in connection with trial
counsel's failure to object to the admission of prior consistent statements.  See [ECF No. 1 at 5].
In his memorandum in support of his petition, however, Petitioner did raise the trial judge's
alleged error as a ground for relief.  [ECF No. 38 at 14–19].  Respondent argues that because
Petitioner's claim regarding judicial error was not included in the petition itself, the claim is
waived.  [ECF No. 42 at 14 n.6].  Respondent cites to Logan v. Gelb, 790 F.3d 65, 70 (1st Cir.
2015), in support of her position, but the issue in that case was whether a petitioner waives an
issue by only raising the issue on appeal and not whether it is sufficient to raise the argument in a
memorandum in support of a petition but not in the petition itself.  See Logan v. Gelb, 52 F.
Supp. 3d 122, 127 (D. Mass. 2014) (reflecting that hearsay claim was raised in connection with
ineffective assistance of counsel claim but not as a standalone Due Process claim); see also
Logan, 790 F.3d at 70 (stating that Due Process claim connected to hearsay was raised for the
first time on appeal).  The Court will consider the issue given that Petitioner is *pro se* and raised
the issue in his memorandum in support of the petition.

contemporaneous objection rule."); Gunter v. Maloney, 291 F.3d 74, 79–80 (1st Cir. 2002)

(stating that miscarriage of justice review does not operate as a waiver of procedural default).

The SJC found that Petitioner had not objected to this testimony at trial, and, under a

miscarriage of justice review, determined that the trial court's evidentiary ruling was not in error.

See Lessieur, 34 N.E.3d at 327–30. Because Surprenant's prior consistent statements were

introduced to rebut claims of recent contrivance, admission of the statements was properly within

the court's discretion. Id. at 330. The SJC noted that Surprenant was vigorously cross examined

at trial regarding recent contrivance, motive to lie, and bias. Id. at 328. Further, a limiting

instruction was given to the jury at trial counsel's request, advising jurors that prior consistent

statements are "admitted into evidence solely on your consideration in evaluating the credibility

issue of a witness and to rebut any suggestion that the trial testimony is a result of recent

contrivance or fabrication." Id. at 328 n.6.[5]

"Because the SJC resolved [Petitioner's] claim on state law grounds, [this Court] may

only review this claim if [Petitioner] establishes 'cause and prejudice' with respect to the

procedural default," Horton, 370 F.3d at 81, or "a fundamental miscarriage of justice," Logan,

790 F.3d at 72–73. To establish "cause," Petitioner cites the ineffectiveness of his counsel. See

[ECF No. 38 at 17–18]; Horton, 370 F.3d at 81 ("One way to establish cause is to demonstrate

that defense counsel's inaction constituted ineffective assistance of counsel."). As the Court

discussed supra in Section IV.A.1, however, trial counsel was not ineffective for failing to object

---

[5] Petitioner also claims that the prosecution improperly referenced Surprenant's prior consistent statements during its opening argument, before defense counsel had an opportunity to suggest recent contrivance. [ECF No. 38 at 22–23]. The SJC has held, however, that prior consistent statements may be introduced before defense counsel "has an opportunity to impeach the witness" when it is clear that defense counsel plans to do so. Commonwealth v. Barbosa, 933 N.E.2d 93, 115 (Mass. 2010).

to prior consistent statements.  Petitioner is therefore unable to establish cause based on the performance of his counsel.  The alternative theory, the fundamental miscarriage of justice exception, is very narrow and "applies only in extraordinary circumstances—circumstances in which a petitioner makes some showing of actual innocence."  <u>Janosky</u>, 594 F.3d at 46. Petitioner has failed to demonstrate actual innocence and has therefore failed to establish a fundamental miscarriage of justice.[6]

### C.  Conviction Based on Uncorroborated Testimony

Petitioner next contends that his Due Process rights were violated because he was convicted based solely on the uncorroborated testimony of Surprenant.  [ECF No. 1 at 7; ECF No. 38 at 27–37].  In addition, Petitioner claims that the SJC failed to address this claim and that this Court should therefore review his claim *de novo*.  [ECF No. 38 at 27].  Respondent argues that a claim of insufficient evidence is unexhausted and thus inappropriate for federal habeas review.  [ECF No. 42 at 27 n.13]; <u>see also</u> 28 U.S.C. § 2254(b)(1) (imposing requirement that a writ of habeas corpus not be granted unless "the applicant has exhausted the remedies available in the courts of the State").  In support of her position, Respondent cites to the SJC's statement that "the [Petitioner] does not contest the sufficiency of the evidence at trial but rather presents a series of arguments that attack the credibility of Surprenant's testimony." <u>Lessieur</u>, 34 N.E.3d at 327; [ECF No. 42 at 27 n.13].

---

[6] Although not explicit, Petitioner appears to make a Due Process argument in connection with this ground for relief.  <u>See</u> [ECF No. 38 at 15–17].  As Respondent notes, however, Petitioner did not make a constitutional claim before the SJC regarding the trial court's admission of prior consistent statements, and any such claim is therefore unexhausted.  [ECF No. 42 at 14 n.7]; [S.A. Vol. I, Tab F at 25–34 (appellate brief)]; <u>see also</u> <u>Sanchez</u>, 753 F.3d at 294 (stating that petitioners must "fairly and recognizably" present federal claims to state courts to satisfy AEDPA exhaustion requirement).

Under the Supreme Court's precedent in Jackson v. Virginia, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." 443 U.S. 307, 316 (1979). Therefore, the Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." O'Laughlin, 568 F.3d at 299 (quoting Jackson, 443 U.S. at 319).

At the outset, Petitioner must have exhausted his claim in state court which requires that he have presented a federal claim in such a way as to alert the state court to the issue. Sanchez, 753 F.3d at 294. As Petitioner notes, his appellate brief cited to both Jackson and its functional state law equivalent, Commonwealth v. Latimore, 393 N.E.2d 370 (Mass. 1979). See [S.A. Vol. I, Tab F at 39 ("[I]n weighing the sufficiency of the evidence, the Court determines 'whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting Latimore, 393 N.E.2d at 374) (citing Jackson, 443 U.S. at 318–19))]. This citation, however, was in support of his claim regarding uncorroborated evidence and did not pertain to a more general sufficiency of the evidence claim applicable to his conviction as a whole. See [id. at 35–39]; see also [S.A. Vol. I, Tab H (Petitioner's reply brief)]. Accordingly, the SJC analyzed the sufficiency of the evidence in the context of his uncorroborated evidence claim, recognized the claimed Due Process violation, and recited evidence demonstrating that Surprenant's testimony was, in fact, corroborated. Lessieur, 34 N.E.3d at 333, 333 n.14. To the extent that Petitioner now seeks to make a broader insufficiency of the evidence claim, that claim is unexhausted. See Conningford, 640 F.3d at 482 (holding that habeas courts should not consider claims that have not been exhausted in state court).

19

In evaluating the sufficiency of the evidence with regard to Surprenant's testimony, the fact "[t]hat the SJC applied <u>Latimore</u> rather than <u>Jackson</u> does not diminish its claim to deference under AEDPA, as 'the <u>Latimore</u> test . . . is functionally identical to the <u>Jackson</u> . . . standard.'" <u>Linton v. Saba</u>, 812 F.3d 112, 123–24 (1st Cir. 2016) (internal citation omitted) (quoting <u>Logan</u>, 790 F.3d at 71).  The SJC was not required to explicitly cite to <u>Jackson</u>, particularly when it cited <u>Latimore</u>, as both cases apply the same standard.  <u>See</u> <u>Lessieur</u>, 34 N.E.3d at 333, 333 n.14 (citing <u>Latimore</u>, 393 N.E.2d at 374); <u>Logan</u>, 790 F.3d at 71 (noting that it is not necessary for the SJC to cite both <u>Latimore</u> and <u>Jackson</u> in resolving habeas petitions).  Further, the SJC effectively addressed Petitioner's Due Process concerns when it determined that Surprenant's testimony was corroborated by testimony from Beaulieu, Cruz, and others.  <u>See</u> <u>Lessieur</u>, 34 N.E.3d at 333, 333 n.14; <u>see also</u> <u>Hurtado v. Tucker</u>, 245 F.3d 7, 20 (1st Cir. 2001) ("Even on direct appeal, claims that the evidence was insufficient to support the verdict are 'often made, but rarely successful.'" (quoting <u>United States v. Moran</u>, 984 F.2d 1299, 1300 (1st Cir. 1993))).

Finally, Petitioner contends that the Commonwealth should not allow conviction by uncorroborated testimony, though he acknowledges that there is no Supreme Court authority to support his position.  [ECF No. 38 at 30–31].  The Supreme Court has recognized that it would be "the better practice for courts . . . to require corroborating testimony before giving credence to such evidence.  While this is so, there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."  242 U.S. 470, 495 (1917).  Even if there were such a rule, the SJC determined that there was sufficient corroborating testimony to support Surprenant's account.  <u>See</u> <u>Lessieur</u>, 34 N.E.3d at 333, 333 n.14.  Petitioner has failed to demonstrate that the SJC's decision was contrary to, or an unreasonable application of federal law.  <u>See</u> 28 U.S.C. § 2254(d)(1)–(2); <u>Williams</u>, 529 U.S. at 405 ("The text of § 2254(d)(1) . . .

suggests that the state court's decision must be substantially different from the relevant precedent of this Court.").

### D.    Judge Improperly Made Credibility Determinations

Petitioner next argues that the MNT judge erred in denying Petitioner a new trial based on newly discovered evidence.  [ECF No. 1 at 8; ECF No. 38 at 37–39].  In particular, Petitioner argues that the MNT judge found this new evidence "suspect based on [the motion judge's] own credibility determination rather than" that of a jury.  [ECF No. 1 at 8].  Respondent states that Petitioner is challenging a purported error of state law, which is not a basis for habeas relief.  [ECF No. 42 at 28–29].  In the alternative, Respondent argues that Petitioner failed to exhaust his state remedies because he did not raise a federal claim on this ground before the SJC.  [Id. at 28 n.14].

Petitioner filed his motion for a new trial pursuant to Rule 30 of the Massachusetts Rules of Criminal Procedure, which provides the trial judge with authority to "make such findings of fact as are necessary to resolve the defendant's allegations of error of law."  Mass. R. Crim. P. 30(b); [S.A. Vol. I, Tab D].

> To prevail under state law on a motion for a new trial on the basis of newly discovered evidence, a criminal defendant must not only show that the evidence was 'unknown and unavailable at the time of trial despite the diligence of the moving party' but also that the evidence was material, meaning it was 'relevant and admissible but also in the sense that it is important evidence of such nature as to be likely to affect the result.'

Green v. Kenneway, 390 F. Supp. 3d 275, 288 n.11 (D. Mass. 2019) (quoting Wojcicki v. Caragher, 849 N.E.2d 1258, 1268–70 (Mass. 2006)).  "The evidence said to be new not only must be material and credible but also must carry a measure of strength in support of the defendant's position."  Commonwealth v. Grace, 491 N.E.2d 246, 248 (Mass. 1986) (internal citation omitted).  "Thus newly discovered evidence that is cumulative of evidence admitted at

the trial tends to carry less weight than new evidence that is different in kind." Id.  On appeal, the SJC defers to the judge considering the motion for a new trial and will accept their "assessment of the credibility of witnesses at the hearing on the new trial motion . . . ." Id. at 249; see also Commonwealth v. Santiago, 937 N.E.2d 965, 972 (2010) (stating that a trial judge who also considered a motion for a new trial was "in the best position to weigh the credibility of the proffered evidence and to determine its probable impact on a jury hearing it with all of the other evidence").

The SJC evaluated Petitioner's claim under a two-pronged test, first asking "whether the [new] evidence 'casts real doubt on the justice of the conviction,' and second, "whether 'there [wa]s a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial.'" Lessieur, 34 N.E.3d at 334 (first quoting Commonwealth v. DiBenedetto, 941 N.E.2d 580, 587 (2011), then quoting Grace, 491 N.E.2d at 248).  Because the two witnesses who provided new evidence were both close friends of Petitioner and because the "proffered testimony was largely cumulative," the SJC held that the MNT judge's decision to deny Petitioner's motion was reasonable.  Id.  Finding that the new evidence did not satisfy the first prong, the SJC did not address the second portion of the test, which places the burden on the defendant to "prov[e] that reasonable pretrial diligence would not have uncovered the evidence." Id. (quoting Grace, 491 N.E.2d at 248).

"Denial of a motion for a new trial based on newly discovered evidence may only be reviewed on habeas for 'the presence of error of constitutional magnitude.'" Subilosky v. Callahan, 689 F.2d 7, 9 (1st Cir. 1982) (quoting Sawyer v. Mullaney, 510 F.2d 1220, 1221 (1st Cir. 1975)).  When petitioners "have received a full and fair factual review in state courts, the federal courts, in habeas proceedings, will not engage in second guessing." Id. (quoting Grace v.

Butterworth, 586 F.2d 878, 881 (1st Cir. 1978)).  As the SJC held, Petitioner has not

demonstrated that the MNT judge's determination was in error.  Lessieur, 34 N.E.3d at 333–34;

see also Hurley v. Corbett, No. 11-cv-11871, 2012 U.S. Dist. LEXIS 180211, at *10 (D. Mass.

Dec. 20, 2012) ("This Court agrees with the Appeals Court and finds that the trial judge's

determination that the witnesses were not credible represented a sufficient independent state law

ground."); Little v. Murphy, No. 95-cv-10889, 1998 U.S. Dist. LEXIS 19700, at *21 (D. Mass.

May 21, 1998) ("[The MNT judge's] express finding that the confession is not credible must

stand.").

      In any case, errors grounded in state law cannot serve as a basis for habeas relief where a

petitioner has failed to allege a constitutional claim.  Estelle, 502 U.S. at 67–68 ("[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions."); Kater, 459 F.3d at 61 ("Errors based on violations of state law are not within the

reach of federal habeas petitions unless there is a federal constitutional claim raised.").

Petitioner framed his claim to the SJC solely in terms of judicial error that implicated issues of

state law.  [S.A. Vol. I, Tab F at 39–46].  In his appellate brief, Petitioner mentioned Due Process

once in his discussion on this claim: "In addition, since the defendant exercised his Sixth

Amendment right to a jury trial, assessing the new evidence for its likely impact on the jurors

demonstrates recognition of that choice and of the defendant's constitutionally guaranteed due

process rights."  [Id. at 42].  The SJC did not recognize this as a Due Process claim, see Lessieur,

34 N.E.3d at 333–34, and this Court also does not find that Petitioner presented "the substance of

a federal constitutional claim in such a manner that it 'must have been likely to alert the court to

the claim's federal nature.'"  Dougan, 727 F.2d at 201 (quoting Daye, 696 F.3d at 192).

Even if he had raised a Due Process claim in state court, Petitioner has not demonstrated that the state court decision applied clearly established federal law in a way that was "objectively unreasonable."  See Sanchez, 753 F.3d at 299 (quoting White, 572 U.S. at 419).  Rather, the state court properly applied the Massachusetts standard for motions for new trial on the basis of newly discovered evidence—a standard functionally equivalent to the federal standard.  Compare Lessieur, 34 N.E.3d at 333–34 (holding that a defendant must show that evidence is "newly discovered," "casts a real doubt on the justice of the conviction," is "material and credible," and supports "the defendant's position" (quoting Grace, 491 N.E.2d at 248)), with United States v. Hernandez-Rodriguez, 443 F.3d 138, 143 (1st Cir. 2006) (holding that a defendant must establish that the new evidence was "material" and "unknown . . . at the time of the trial . . . despite due diligence," and was "likely to result in an acquittal upon retrial" (quoting United States v. Falú-González, 205 F.3d 436, 442 (1st Cir. 2000)).  In addition, the Commonwealth's precedent regarding credibility determinations by a judge hearing a motion for a new trial is consistent with federal precedent from the First Circuit.  See United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980) ("Motions for new trial are directed to the discretion of the trial court.  In considering such a motion, the court has broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes 'new' evidence." (emphasis added)).  Petitioner has failed to identify Supreme Court precedent that prevents a judge from making credibility determinations as to new witnesses at a hearing on a motion for a new trial.  See [ECF No. 38 at 37–39]; see also Williams, 529 U.S. at 404–05 (noting that "a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) 'contrary to . . . clearly established Federal law . . . or (2) 'involved an unreasonable application of . . . clearly established Federal law'" (quoting 28 U.S.C. 2254(d)).

### E.        Prosecution's Improper Vouching During Closing Statement

Petitioner claims that the prosecution improperly vouched for Surprenant during closing

arguments by stating, "How could—you saw him—he's not.  Okay?"  [ECF No. 38 at 44–50].[7]

Respondent argues that this claim is procedurally defaulted because trial counsel did not object

to the statement at trial, barring habeas review.  [ECF No. 42 at 16, 16 n.9].  Again, Respondent

cites to the Commonwealth's consistently applied contemporaneous objection rule in support of

her contention that this claim was resolved on an adequate and independent state ground.  [ECF

No. 42 at 16]; see Gunter, 291 F.3d at 79 ("[The] SJC regularly enforces the rule that a claim not

raised is waived.").[8]

Just as it did with Petitioner's procedurally defaulted claim relating to the admission of

prior consistent statements, the SJC analyzed Petitioner's claim under a miscarriage of justice

standard and concluded that "[t]he prosecutor did not improperly vouch for Surprenant's

testimony."  Lessieur, 34 N.E.3d at 332–33.  Rather, the prosecutor "merely refer[ed] to the

Commonwealth's need to review details of the murder . . . highlight[ed] the lack of concrete

leads in the case prior to the interview with Surprenant . . . and acknowledge[ed] the

questionable parts of Surprenant's statement that indicated that Surprenant did not create a

fabricated story."  Id.

---

[7] The SJC provides the following version of the statement, which is consistent with the trial transcript: "Why would [Surprenant]—how could [Surprenant] make up, create—you saw him, he's not—Okay?"  Lessieur, 34 N.E.3d at 333; [S.A. Vol. III, Tab 7 at 95].

[8] Respondent also correctly states that Petitioner did not raise the improper vouching claim as a federal claim in his appeal to the SJC.  [ECF No. 42 at 16 n.9; S.A. Vol. I, Tab F at 54–57 (discussing the error under a miscarriage of justice standard)].  Petitioner did not allege a specific constitutional claim, cite to Supreme Court precedent, or otherwise alert the state court that he was asserting a federal claim, therefore it is unexhausted and not ripe for habeas review.  See Sanchez, 753 F.3d at 296 (noting that "a litigant satisfies the fair presentment requirement" for habeas review "by identifying a claim as federal in his or her brief to a state appellate court").

Petitioner has failed to establish cause and prejudice or a fundamental miscarriage of justice that would justify excusing his procedural default of this claim.  See [ECF No. 38 at 44–50]; see also Logan, 790 F.3d at 72–73 (discussing requirements to excuse procedural default).[9] As a result, the SJC's decision that this claim was procedurally defaulted "is an independent and adequate ground for decision," precluding habeas review on the merits of his claim.  See Horton, 370 F.3d at 80–81.

## V.  CONCLUSION

Accordingly, Petitioner's petition for a writ of habeas corpus, [ECF No. 1], is DENIED. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rules Governing Section 2254, Cases, R. 11(a).  The Court declines to grant a certificate of appealability to Petitioner.

**SO ORDERED.**

May 19, 2020                                                    /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE

---

[9] Even if this claim had not been procedurally defaulted, the First Circuit has held that "[t]he line between the legitimate argument that a witness's testimony is credible and improper 'vouching' is often a hazy one, to be policed by the trial court in the first instance."  United States v. Innamorati, 996 F.2d 456, 483 (1st Cir. 1993).  The prosecution's disjointed comment during closing is unclear and it is difficult to conceive that the jury would have understood it as vouching for Surprenant's veracity.  Petitioner conceded as much in his appellate brief.  See [S.A. Vol. I, Tab F at 55 n.14 (noting that "the intent of [this] statement[] is not crystal clear" but arguing that in combination with other statements not raised in his petition, the statement could have been viewed as vouching)].